UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ANSEL DAVIS, *an individual,*

                      Plaintiff,                      **CASE NO.**

vs.

UBER TECHNOLOGIES, INC.,
*a California corporation,*

                      Defendant.
_____/

## COMPLAINT

Plaintiff, ANSEL DAVIS, *on behalf of himself and* a*ll others similarly situated* (hereinafter "Plaintiff"), sues Defendant, UBER TECHNOLOGIES, INC. (hereinafter "UBER"), and alleges:

## NATURE OF THE CASE

1.      Defendant is a taxi rideshare company, that provides transportation services to the public throughout the State of Florida, including but not limited to Broward County, Florida. Because it is primarily engaged in the business of transporting people, Defendant is a covered entity under the Americans with Disabilities Act of 1990 (the "ADA"), and relevant related implementing regulations.

2.      Plaintiff is blind and uses a guide dog to navigate. Because he is blind, Plaintiff cannot drive, and depends on third party services, including UBER, to travel locally. In this case, UBER has repeatedly, consistently, and incessantly failed and/or refused to transport Plaintiff, only because he is accompanied by a guide dog. This conduct by UBER violates the ADA.

3.      Defendant has been sued repeatedly (by other blind and visually impaired individuals) for the same issues that are raised in this case and Defendant has itself acknowledged (to Plaintiff) that the conduct here at issue is unlawful (and promised that it would be remedied).

Those promises, however, have been hollow meaningless boilerplate, and Defendant's drivers continue to refuse to transport Plaintiff because of his guide dog. Defendant is directly responsible for complying with its own non-delegable duty to adhere to ADA requirements and is also vicariously liable for ADA violations of its drivers.

4. Each instance of unlawful discrimination by UBER has left Plaintiff, who is blind, stranded away from home with no transportation (to say nothing of the humiliation and rejection of being repeatedly abandoned by drivers). Plaintiff has also been charged for rides he was not given (because the driver refused to take his service animal), charged cancelation fees for rides illegally canceled by UBER drivers themselves, and UBER has failed to make promised compensatory payments or to immediately refund wrongful cancelation charges.

5. This conduct is continuing, despite multiple lawsuits against UBER by others experiencing the same issues, and constant empty promises to cure. Defendant is clearly undeterred and unmoved by litigation aimed at rectifying this misconduct, and at this point, it is clear that only a punitive damage award might possibly cause UBER to take effective action to cure this persisting misconduct.

## JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*., as well as damages and punitive damages pursuant to Chapter 768, Florida Statutes. This Court is vested with original jurisdiction over Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 and § 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper and lies in this Court pursuant to 28 U.S.C. §1391 in that all or most of the transactions or occurrences giving rise to this lawsuit occurred in Broward County, Florida, which is located within this District.

3. Defendant, UBER TECHNOLOGIES, INC., is subject to the personal jurisdiction of this Court; Defendant is and has been violating the civil rights of blind persons in this District through, *inter alia*, its pattern of conduct set forth herein. Defendant is providing services to consumers throughout this District and causing damage to certain of those consumers whose civil rights are violated. Defendant employs drivers throughout the State of Florida, including within Broward County, Florida, to provide transportation services, is registered to do business in Florida, and maintains a registered agent in Plantation, Florida, which is located in Broward County.

## THE PARTIES

4. Plaintiff, ANSEL DAVIS, was and is over the age of 18 years, *sui juris*, and a resident of Broward County, Florida.

5. Plaintiff has at all material times suffered from a "qualified disability" under the ADA. Plaintiff is blind. He requires a guide dog to avoid obstacles and to otherwise navigate and traverse unknown terrain. Because he is blind, Plaintiff cannot drive, and is reliant on other forms of transportation, including UBER, to travel locally.

6. Defendant, UBER TECHNOLOGIES, INC., was and is a for-profit Delaware corporation, which is registered to do business, and is doing business, in Florida. Defendant uses its smartphone application software to arrange rides between passengers and its drivers, much like the way in which a taxi dispatcher coordinates rides between passengers and its taxi drivers.

7. On at least a dozen occasions (that he specifically complained about to UBER), Plaintiff called for a ride through his UBER app, only to have the assigned driver refuse him service

because he was accompanied by a guide dog. Many of these instances have been witnessed by third parties, one instance resulted in a police report in which the officer at the scene determined that the UBER driver violated Florida law by this conduct, and one instance was documented by a freelance journalist – and every instance left Plaintiff stranded away from home, delayed, scrambling to find alternative transportation (sometime from strangers), and/or forced to expend money on alternate travel methods. Adding insult to injury, Plaintiff has been charged cancelation fees, for rides that were illegally canceled by UBER drivers. Defendant has acknowledged these issues, and represented that the issues would be cured, but never to any effect. Defendant also promised payment as compensation to Plaintiff, which was never actually paid.

8. These issues persist unabated, notwithstanding Defendant's actual knowledge of the problem, and feckless promises to cure these issue. Defendant has failed to effectively enforce any policy or procedure requiring compliance with the ADA as it relates to service animals, has failed to remove drivers from its system when they willfully cancel rides based on disability (service animal), failed to effectively train new and existing drivers to comply with their obligation to transport service animals, and failed to protect Plaintiff (and others) from discrimination perpetrated by UBER drivers *even after* being put on repeated specific notice that this was and is a recurring problem.

**FACTS**

9. Plaintiff is blind and is a resident of Broward County, Florida. Plaintiff uses a guide dog to navigate in unfamiliar places, and to otherwise assist with the challenges presented by his inability to see. Plaintiff cannot drive and therefore depends on third parties for transportation. Plaintiff uses UBER services for local rides.

10. Over the past five (5) years, Plaintiff has been discriminated against by Defendant on a consistent basis, through the chronic failure of UBER drivers to allow Plaintiff to be accompanied by his guide dog, and by denial of services to Plaintiff based on his service animal. A screenshot from Defendant's app showing the number of complaints that Plaintiff has lodged regarding discrimination by UBER drivers is attached as Exhibit "A."

11. By way of specific illustrations, on June 1, 2022, Plaintiff was waiting to be picked up by an UBER driver in Plantation, Florida. His guide dog was under his control, on a leash with guide dog harness, and was clearly marked as a service dog. *See Police Report dated June 1, 2022, attached as Exhibit "B."* Plaintiff heard a notification from his phone that the UBER driver had arrived. Plaintiff heard the driver speaking to a nearby bystander, who indicated to the driver that Plaintiff was the passenger. *Exhibit "B."* The driver specifically stated that he would not allow Plaintiff's service dog into the vehicle, at which point the bystander protested that the dog was a service animal, and that Plaintiff is blind. *Exhibit "B."* The driver refused, and left, stranding Plaintiff with no ride, standing by the side of the road.

12. Police officers were called, and officers at the scene concluded that "the Uber driver clearly interfered with the rights of an individual with a disability by denying him admittance to a public accommodation." *Exhibit "B."* The police officers then drove Plaintiff to his destination, since he was now stranded, and police also helped him to get a refund from UBER, **which had charged him a fee for the ride that he was denied.** *Exhibit "B."* The police then attempted to access UBER's "Law Enforcement Response Team" so that they could identify the driver, *but conveniently for Defendant*, the system was not working. *Exhibit "B."*

13. On July 8, 2022, Plaintiff had just finished a haircut and called for an UBER to take him home. He asked people in the barbershop to look out for the UBER and to let him know when

it arrives. When the UBER arrived, Plaintiff went out to meet it, and in front of multiple witnesses, the driver proclaimed "I don't take dogs. Period." The driver then left, and kept driving, *without canceling Plaintiff's trip*. Plaintiff was completely stranded. One of the witnesses to this incident agreed to drive Plaintiff home – luckily. This incident was documented, along with witness names and statements at the scene, by a freelance journalist who happened to be present, and who memorialized what took place that day.

14. Defendant is acutely aware of these and many other examples of discrimination to which Plaintiff and others are being continuously subjected but has done nothing to remedy the issue. On April 27, 2021, UBER promised Plaintiff that it would "remind" its driver (who discriminated against Plaintiff) to "follow all laws." *Composite Exhibit "C."* After the June 1, 2022, incident described above, UBER assured Plaintiff that it would "deal with this immediately." *Composite Exhibit "C."* After the July 8, 2022, incident, UBER promised "we will get this sorted out for you." All these boilerplate, empty, feckless promises by UBER amount to nothing. There is never any follow-up, and these false promises serve as cold comfort to Plaintiff and other blind passengers who continue to be stranded roadside by UBER drivers.

15. These are only the most recent examples of the discrimination that Plaintiff (and untold numbers of others) has been suffering because UBER cannot (or just will not) enforce non-discrimination policies to protect the blind and visually impaired. Defendant has been sued repeatedly for this issue,[1] and the media and Internet are replete with stories about UBER drivers discriminating against blind passengers,[2] yet UBER continues to discriminate against the disabled

---

[1] *See, e.g.,* Jolliff vs. Uber Technologies, Inc., et. al., EDVA Case No. 16-605; National Federation Of The Blind Of California, et. al. vs. Uber Technologies, Inc. NDCA Case No. 14-4086; Phan vs. Uber Technologies, Inc. et. al., NDCA Case No. 22-440; Greco vs. Uber Technologies, Inc., et. al., NDCA Case No. 20-2698; Jainchill vs. Uber Technologies, Inc., SDFL Case No. 17-61075.

[2] The list of stories online about this issue is significant. As just a few examples: *Blind Man With Guide Dog Denied Uber Ride, Stands Up For Rights* (https://youtu.be/7HmUnjhJDko); *Uber driver refused service to Murfreesboro*

– unabated by lawsuits or bad publicity. At this point, nothing short of a punitive damage award in an amount that will change this ongoing misconduct *might* correct UBER's incessant and continuing discrimination.

## COUNT I
## VIOLATION OF THE ADA

16. Plaintiff re-avers and re-alleges the allegations set forth in Paragraphs 1-15 above, as though fully set forth herein.

17. Plaintiff is, and at all times relevant was, a qualified individual with a disability within the meaning of ADA and Department of Transportation ("DOT") regulations implementing the ADA, because he is blind, and therefore cannot see.

18. UBER is a covered entity under the ADA because it is a transportation company that is "primarily engaged in the business of transporting people" and its "operations affect commerce." *42 U.S.C. § 12184*. Uber has non-delegable duties under the ADA to provide its transportation services to qualified individuals with disabilities in non-discriminatory fashion.

19. UBER (directly and indirectly through its employee drivers) owns, operates, or leases vehicles providing taxi service and specified public transportation within the meaning of Title III of the ADA and its implementing regulations. UBER also operates a "demand responsive system" as that term is defined by ADA and DOT regulations.

20. As set forth above, UBER's acts and omissions have violated Plaintiff's civil rights under the ADA and its implementing regulations. UBER is directly liable for these violations and is also vicariously liable for the discriminatory misconduct of its drivers.

---

*guide dog* (https://youtu.be/nKsO7UNfabw; *Most Uber Drivers Discriminate Against Service Dog Users* (www.youtube.com/watch?v=PhHve1-kAWM); *Uber driver refuses to pick up blind paratriathlete with service dog* (www.youtube.com/watch?v=EggyeR0XhsQ).

21. UBER s directly liable for failing to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals, even though taking such steps would not fundamentally alter the nature of its services and would not constitute an undue burden.

22. UBER is directly liable for its own failure to properly/effectively train its drivers to comply with basic civil rights laws (to say nothing of common decency) by transporting blind passengers with their guide dogs. This failure persists notwithstanding repeated empty promises by UBER to enforce such policies.

23. UBER is vicariously liable for discrimination perpetrated by its drivers during their employment with or by UBER because it has a nondelegable legal duty under the ADA to ensure that these drivers do not screen out blind individuals with service animals (like Plaintiff), thus preventing them from fully enjoying UBER services.

24. UBER is vicariously liable for discrimination perpetrated by its drivers in the course of their employment with or by UBER, because UBER has a non-delegable duty to ensure that its services are not denied to the disabled purely on the basis of disability.

25. Defendant will continue to discriminate against Plaintiff and others with disabilities unless and until it is compelled by this Court to remediate the ADA violations set forth herein, and to ensure that no qualified individual with a disability is ever excluded by any UBER driver based on the presence of a service animal, by making appropriate alterations to policies and procedures.

**WHEREFORE,** for the foregoing reasons, Plaintiff, ANSEL DAVIS, respectfully requests that final judgment be entered in his favor, and against Defendant, UBER TECHNOLOGIES, INC., including (a) a permanent injunction pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, requiring Defendants to take the steps necessary to ensure that UBER

drivers who provide UBER taxi services do not unlawfully refuse to transport blind and visually impaired individuals with service animals (including Plaintiff); (b) an order awarding Plaintiff reasonable attorneys' fees and costs, as authorized by 42 U.S.C. § 12188; and (c) all such other relief as this Court deemed just and equitable under the circumstances here presented.

## COUNT II
## NEGLIGENT TRAINING AND SUPERVISION

26. Plaintiff re-avers and re-alleges the allegations set forth in Paragraphs 1-15 above, as though fully set forth herein.

27. UBER has at all times had a duty to properly train its drivers with regard to the basic legal requirements of their job, and to enforce those requirements.

28. UBER has failed to *effectively* train or instruct its drivers regarding their mandatory legal obligations imposed by the ADA, regarding transporting service animals, including guide dogs for the blind and visually impaired.

29. UBER has failed to *effectively* enforce any existing policies or procedures that it may have in place for drivers (if any), which require drivers to transport service animals, including guide dogs, for the blind and visually impaired.

30. UBER has been sued repeatedly for these persistent failings, and effectively admits its own failures in this regard, as set forth in Paragraph 14, above.

31. As a direct and proximate result of UBER's failure to properly/effectively institute effective policies and procedures required by the ADA, and/or its failure to effectively enforce policies and procedures required by the ADA, Plaintiff has suffered damages including deprivation of use of funds deducted from his bank account (until those funds were later returned), inconvenience and expense of locating alternative transportation, failure to pay compensatory amounts as promised, and such other damages as the Court may find and award in this case.

**WHEREFORE,** for the foregoing reason, Plaintiff, ANSEL DAVIS, respectfully request that this Court enter judgment in his favor against Defendant, UBER TECHNOLOGIES, INC., for compensatory damages in an amount deemed just and equitable in this case, and for punitive damages in an amount sufficient to deter UBER's ongoing misconduct described herein (motion for leave to amend to seek punitive damages to follow).

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on any issues so triable as a matter of right.

DATED this **3rd** day of **August,** 2022.

Respectfully Submitted,

**LAW OFFICES OF NOLAN KLEIN, P.A.**
*Attorneys for Plaintiff*
5550 Glades Rd., Ste. 500
Boca Raton, FL 33431
PH:  (954) 745-0588

By:   */s/ Nolan Klein, Esq.*
NOLAN K. KLEIN, ESQUIRE
Florida Bar No. 647977
klein@nklegal.com
amy@nklegal.com